546 So.2d 1280 (1989)
Dennis C. DRURY
v.
Marylin Odom Wife of Eben T. WATKINS, III, et al.
No. CA 87 1489.
Court of Appeal of Louisiana, First Circuit.
June 20, 1989.
Rehearing Denied August 17, 1989.
*1281 Charles E. McHale, New Orleans, for plaintiff, appellee.
Moise S. Steeg, Jr., and Robert M. Steeg, New Orleans, for defendant, appellant.
Before COVINGTON, C.J., and LOTTINGER, WATKINS, SAVOIE and FOIL, JJ.
LOTTINGER, Judge.
This matter arose as a suit to confirm and quiet tax title, pursuant to La.R.S. 47:2228, filed by Dennis C. Drury against the heirs of Edna Baldwin Odom; namely: Marylin Odom Watkins and her two children, Mary Lois Watkins Smitherman and Mary Lynn Watkins Buchanan (Watkins). Defendants answered alleging the invalidity of the tax sale. From a judgment granting plaintiff's motion for summary judgment and denying defendants' motion for summary judgment, defendants appeal.

FACTS
The subject property was purchased by Drury on July 7, 1986, from Nelwyn M. Landry by quit claim deed for $500.00 cash.[1] Landry acquired the property at a St. Tammany Parish Sheriff's tax sale on May 29, 1981, when the property was sold for unpaid taxes for the tax year 1980. At the time of the tax sale, the property was assessed in the name of Edna B. Odom, who had died in December of 1978. Also, at the time of and prior to her death, Mrs. Odom's address was listed with the St. Tammany Parish Assessor's Office as 3400 Jeff Avenue, New Orleans, Louisiana 70125, which is where the tax notices were sent.
Mrs. Odom paid the 1978 taxes prior to her death. At the end of 1979, that year's tax bill was again sent to Mrs. Odom at the Jeff Avenue address. The tenant occupying the Jeff Avenue property forwarded the tax bill to Watkins, who in turn returned the tax bill, with payment for the taxes, to the sheriff. On the face of the tax bill was noted a change of address from Jeff Ave. to 5400 Dayna Ct., New Orleans, La. 70124, the address where Mrs. Watkins and her husband resided and received mail. The sheriff returned the receipt for payment of taxes to the new address in a self-addressed envelope furnished by Watkins.
At the end of 1980, the tax bill was again sent by the sheriff to the Jeff Avenue address. This tax bill was returned to the sheriff marked: "Moved, not forwardable, March 23, 1981." Watkins never received the bill for the 1980 taxes and did not pay them. The sheriff sent a delinquency notice, by certified mail, to Edna B. Odom at the Jeff Avenue address. This notice was returned by the Postal Service with the notation, "return to sender," and there was written on the envelope, "sold, mail not forwardable." The sheriff took no further *1282 action and placed this individual letter in his files. The property was ultimately sold for non-payment of the 1980 taxes.
The tax bills for 1981 were sent out at the end of that year. The tax bill for the subject property was sent to Edna B. Odom at the Jeff Avenue address. It was not received by Watkins, and subsequently a delinquency notice was sent to the Jeff Avenue address. Somehow, Watkins received this notice. The delinquent amount was paid, and on the face of the notice was written, "Please change mailing address to 5400 Dayna Court, N.O. La 70124" and returned to the sheriff. Additionally, Watkins wrote the following letter to the sheriff:
March 9, 1982
Patrick J. Canulette
Sheriff and Tax Collector
P.O. Box 1120
Covington, Louisiana 70434
RE: Tax Bill enclosed
Gentlemen:
The enclosed tax bill and the payment therof (sic) is forwarded to you.
Please be advised that Mrs. Odom died in 1978 and we would appreciate your changing the mailing address to:
5400 Dayna Court
New Orleans, Louisiana 70124
The heirs were put in possession during 1981 and I would appreciate your letting me know if this change has been noted on your records on the behalf of Marylin Odom Watkins.
Sincerely,
Eben T. Watkins
ETW:ms
Encl.
In returning a receipt to Watkins at the Dayna Ct. address, the sheriff wrote on the face of the receipt: "We do not change address. Contact the Assessor's office."
In response to the sheriff's advice, Watkins wrote the following letter:
March 24, 1982
St. Tammany Parish Assessor's Office
Courthouse Building
Covington, Louisiana 70433
RE: Assessment No. 12001600
Ward O4R; Bill No. 3661
Dear Sir:
We recently received a tax bill from Sheriff Canulette with reference to the above, but unfortunately it was mailed to the wrong address. It was addressed to:
Odom, Edna B.
3400 Jefferson Avenue
New Orleans, Louisiana 70125
Mrs. Odom died in December 1978 and the heirs were put into possession in 1981 when the succession was completed. Please change the mailing records for the tax bills on this property to read:
Mrs. Marylin O. Watkins, et al
5400 Dayna Court
New Orleans, Louisiana 70124
We would appreciate your confirmation of the above so that it can be made a part of the Succession records.
Sincerely,
Eben T. Watkins
Executor in the Succession of Mary Edna Baldwin Odom
BTW:ms
In reply, the assessor's office wrote the following:
Mr. Eben T. Watkins
5400 Dayna Ct.
New Orleans, Louisiana 70124
Dear Mr. Watkins:
The property in the Succession of Odom, Edna B., Ward 4 Rural, St. Tammany Parish, will appear on the 1982 roll as follows:
Watkins, Marylin O. etals
5400 Dayna Court
New Orleans, Louisiana 70124
 Very truly yours,
 /s/John J. Caswell
 JOHN J. CASWELL
 Administrative Assistant
JJC:db *1283 From that date forward, tax bills were sent to Watkins at the Dayna Court address. Tax bills for the years 1982, 1983, 1984, and 1985 were sent and punctually paid by Watkins. However, unknown to Watkins, the property was sold on May 8, 1981, in satisfaction of the unpaid taxes for 1980. This sale was recorded on May 29, 1981. Watkins first learned of the tax sale from the tax purchaser's attorney in June of 1986. This suit was filed on December 19, 1986.

TRIAL COURT
In written reasons for judgment, the trial judge concluded:
It is clear that defendants did not meet the statutory requirement [La.R.S. 47:1965] for notice to the assessor as necessary to attack the subject tax sale.
Defendants' second argument centers around the constitutionality of Louisiana state law and the applicability of Mennonite Board of Missions v. Adams [462 U.S. 791], 103 S.Ct. 2706 [77 L.Ed.2d 180] (1983). This Court believes that Article 7, Section 25 in conjunction with La.R.S. 47:1965 is a reasonable exercise of the inherent powers of the State of Louisiana to maintain efficient assessment and collection procedures, and is not in violation of defendants' rights to due process.
ASSIGNMENTS OF ERROR
In appealing, Watkins contend:
1. The trial court erred in not finding, based upon the facts and circumstances of this particular case, that the omissions and affirmative actions of the Sheriff and the Assessor of St. Tammany Parish combined to deny Appellants meaningful notice and an opportunity to be heard concerning the subject tax sale, as the result of which they were deprived of their property without due process of law.
2. The trial court erred in holding against Appellants on the basis of La. Rev.Stat.Ann. 47:1965, because:
A. Compliance with La.Rev.Stat.Ann. 47:1965 is not a procedural prerequisite to Appellants' assertion of their claim that the tax sale of their property was invalid because they were denied due process of law; and
B. The availability of the procedure set out in La.Rev.Stat.Ann. 47:1965 has no bearing on the merits of the instant case, because Appellants' claim is based upon the actual effect upon Appellants of the affirmative actions of the Assessor and the Sheriff, which under the particular facts of this case denied Appellants meaningful notice and an opportunity to object to the tax sale of this property.

I
Defendants-appellants do not contend that any portion of Louisiana's statutory scheme regarding tax sales is unconstitutional on its face, nor do they contend that any of the actions of the assessor or the sheriff were intentionally wrongful or designed to deprive defendants of their constitutional rights. They do contend, however, that the actions of the governmental officials in this particular case combined to create a set of unique factual circumstances under which defendants were deprived of their property without due process of law. Relying on Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the basis of defendants' argument as stated in brief is:
In the context of a tax sale, the constitutional inquiry concentrates on whether the identity and address of the person who may be potentially deprived of his property is readily available to governmental officials, and on the burdensomeness of the effort required on the part of those officials to take additional steps to give that taxpayer notice and an opportunity to be heard.
On the other hand, plaintiff argues that the continuous policy of this state since the enactment of Article 10, Section 11 of the Constitution of 1921 and its re-enactment *1284 as Article 7, Section 25 of the Constitution of 1974 is that the only defense to a tax title of vacant land after five years of registry is proof of prior payment of the taxes for the year for which the property was adjudicated. Additionally, plaintiff contends that defendants failed to comply with La.R.S. 47:1965 and notify the assessor of the death of the record owner of the property.

II
In their second assignment of error, Watkins contends that the trial court erred in partially basing its judgment on La.R.S. 47:1965.
La.R.S. 47:1965 is found in Revised Statutes Title 47, Revenue and Taxation; Sub-Title III, Provisions Relating to Ad Valorem Taxes; Chapter 3, Assessment; Part III, Assessment Procedure, and provides:
Any assessment made in the name of a party deceased shall be good and valid throughout the state unless notification in writing of the death and of whether or not the succession has been opened and when and where, shall have been made in due season to the assessor by the heirs or parties interested. In all cases property assessed in the name of the owner as appears on the record of the recorder of mortgages at the date of listing shall be deemed properly assessed.
This statute simply provides that the assessment is good throughout the state unless notification in writing of the death and of whether or not the succession has been opened shall have been made in due season to the assessor by the heirs. See White v. Lockhart, 129 So.2d 917 (La.App. 1st Cir. 1961), cert denied, June 22, 1961. This provision of the law only provides for the assessment procedure and the validity vel non of an assessment in the name of a deceased property owner.
Plaintiff cites the recent case of Clark v. Gobert, 510 So.2d 666, 670 (La.App. 3rd Cir.1985), for the proposition that, "[i]t would be unreasonable to expect the taxing authorities to divine who the real owner of a piece of property is when there is no indication that ownership is questioned." In Clark, the property owner was deceased, and the heirs failed to notify the assessor pursuant to La.R.S. 47:1965. Additionally, the heirs were in possession of the property when a certified letter, as well as two regular-mail letters, were sent to the property address, and they did not deny receiving the notice. The subsequent tax sale was upheld. Clark, however, does not stand for the proposition that compliance with La.R.S. 47:1965 is a prerequisite to a suit attacking a tax sale.
Therefore, we conclude that the failure of defendants to comply with R.S. 47:1965 does not in and of itself defeat their attack of the tax sale.

III
In the first assignment of error, Watkins contends the trial court erred in its due process ruling.
La. Const. Art. VII, § 25(C) provides:
No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. A notice of sale shall not be served until the final day for redemption has ended. It must be served within five years after the date of the recordation of the tax deed if no notice is given. The fact that taxes were paid on a part of the property sold prior to the sale thereof, or that a part of the property was not subject to taxation, shall not be cause for annulling the sale of any part thereof on which the taxes for which it was sold were due and unpaid. No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser; however, this shall not *1285 apply to sales annulled because the taxes were paid prior to the date of sale.
This provision is essentially identical to Art. X, § 11 of the Louisiana Constitution of 1921. Plaintiff is correct that the continuous policy of this state as recognized by the constitution is that the only defense to a tax title is proof of prior payment of taxes. However, that policy must give way "to the mandate of the U.S. Constitution as interpreted by the U.S. Supreme Court." Murphy v. Estate of Sam, 527 So.2d 1190, 1195 (La.App. 3rd Cir.1988).
In Murphy, the tax collector failed to mail notice of delinquency as required by La. Const. Art. VII, § 25 and La.R.S. 47:2180. The Third Circuit affirmed the dismissal of a suit to quiet tax title, even though the five-year peremptive period of La. Const. Art. VII, § 25(C) had already expired. Speaking through Judge Doucet, the Court said:
The 14th Amendment to the U.S. Constitution states in part that, "nor shall any State deprive any person of ... property, without due process of law." Given the facts presented herein we find that the failure to even attempt to notify the Fenelons, record owners of the property, apparent from mere inspection of the parish conveyance records, by certified or registered mail or by personal service, does not satisfy the due process requirements of the 14th Amendment as applied by the United States Supreme Court in Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).
* * * * * *
The Mennonite, supra, case has received scant consideration and comment by Louisiana courts. In Dennis v. Vanderwater, 498 So.2d 1097 (La.App. 3rd Cir.1987), writ denied, 501 So.2d 211 (1987), this court cited Mennonite and the Supreme Court's holding concerning the due process requirement of notice but did not rely on it in disposing of the issues presented since under the facts of the case it was not applicable. In Magee v. Amiss, 502 So.2d 568 (La.1987) a residential lot, part of the community of acquets and gains between plaintiff and her estranged husband, was seized and sold to satisfy a judgment against the husband for a separate obligation. The original act of sale, recorded in the mortgage records of East Baton Rouge Parish, recited that the purchaser, Mr. Magee, was "married to and living with" the plaintiff. However, plaintiff did not receive any notice of the pending sheriff's sale. Citing Mennonite, supra, the Louisiana Supreme Court stated:
"On April 21, 1980, when lot forty-three was sold at sheriff's sale, the interest of Doris Magee in the property seized and sold at auction was apparent on the face of the public records, appearing in the recorded deed to which attention was directed by the certificate of mortgages. Alienation of the property without her consent required some notice to her apart from mere publication and advertisement of the sale. LSA-C.C. art. 2347. Her due process rights were violated by the lack of notice. A co-owner like Doris Magee would be entitled to at least the minimum protection recognized in Mennonite."
The Court held that the purchasers at the sheriff's sale and their successors-in-title acquired only the husband's undivided one-half interest in the property while plaintiff retained her undivided one-half interest.
In the case at bar the City of Opelousas, charged by La. Const. Art. 7, § 25 and La.R.S. 47:2180 with notifying the record owner of the delinquency and forthcoming tax sale should the taxes remain unpaid, made no effort to comply with the legal requirement of notice other than publishing notice in a St. Landry Parish newspaper. The City made no attempt whatsoever to notify by mail or personal service, the record owners, who recorded their purchase of the property at least three months prior to the tax *1286 sale. Considering the peculiar facts and circumstances of this case in light of the holding of the U.S. Supreme Court in the Mennonite case, as well as the conflicting holdings of Louisiana Courts on the effect of the failure to give notice in these tax sale cases, we find that the failure of the city of Opelousas to even attempt to notify the Fenelons, by mail or personal service, of the delinquency and pending tax sale renders the tax sale by the City null and void.
527 So.2d 1193 and 1194.
In Childress v. Johnson, 387 So.2d 1217, 1219 (La.App. 1st Cir.), writ denied, 393 So.2d 744 (La.1980), a pre-Mennonite decision, the five-year peremptive period had expired but the tax debtors had physical or corporeal possession of the property. In setting aside the tax sale because the sheriff made no further effort to notify the tax debtors after the mailed notice was returned unclaimed, Judge Covington, now Chief Judge, speaking for this Court said:
... Where mailing of such notice is required, and a mailed notice is returned to the tax collector undelivered or unclaimed, the tax collector is required to take additional reasonable steps to notify the tax debtor, and the failure of the tax collector to perform this obligation renders the tax sale null and void. Sheridan v. Commercial Guaranty and Brokerage Corporation, 292 So.2d 317 (La. App. 1 Cir.1974). Also, when the tax collector, after the tax delinquency notice is sent to the wrong address and returned unclaimed, makes no further effort to ascertain the tax debtor's correct address and deliver notice, the tax sale is void and the purchaser's tax title is invalid. Standard Homes, Inc. v. Prestridge, 193 So.2d 100 (La.App. 2 Cir.1966); see also Succession of Welsch v. Carmadelle, 264 So.2d 341 (La.App. 4 Cir.1972), writ denied, 262 La. 1181, 266 So.2d 452 (1972).
Relying on the above, we now look to the particular facts of the case sub judice. The 1979 taxes were paid by Watkins, and the tax bill was returned to the sheriff with a notation for a change of address. However, the 1980 tax bill was again sent to the Jeff Avenue address, thus ignoring the requested address change; these taxes were not paid. Somehow, Watkins received the 1981 delinquency notice and paid the taxes and again requested a change of address. It was at this juncture that there was correspondence between Watkins and the sheriff, and Watkins was directed to contact the assessor's office, which was done. From then on, Watkins paid the taxes. At the time that the sheriff received the undelivered 1980 tax bill as well as the delinquency notice, he had in his files the 1979 tax bill with the requested address change noted thereon. Moreover, after the property was sold for delinquent taxes, Watkins received a tax bill, paid it, and communicated with both the sheriff and the assessor regarding an address change. Undoubtedly, either one or both of these officials should have realized that the property had been previously sold for taxes. Obviously, records of which they are the custodians of contained this information. As we indicated in Childress, the tax collector cannot sit back and do nothing when a notice is returned unclaimed. We do not believe that under the peculiar facts of this case any undue burden would have been placed on the tax collector. Therefore, we conclude that the tax sale is null and void, upon payment by Watkins of the amounts required by law, as to the following described property:
A CERTAIN PORTION OF GROUND, together with all the improvements thereon, and all rights, ways, privileges, advantages and appurtenances thereunto belonging to or in anywise appertaining, situated in the Parish of St. Tammany, State of Louisiana, in SECTION 13, Township 7 South, Range 11 East and more particularly described as follows:
Beginning at a point located 750 feet South 18 degrees, 10 min. West of the Northeast corner of Section 13, which point is on the Abita-Mandeville Highway (State Highway No. 59) and measuring *1287 thence in a southerly direction along the Abita-Mandeville Highway a distance of 140 feet to a point, which is the point of beginning, thence at right angles in a westerly direction, a distance of 200 feet to a point; thence at right angles in a southerly direction a distance of 26 feet to a point; thence at right angles in a westerly direction a distance of 320 feet to a point; thence at right angles in a southerly direction a distance of 136 feet; thence at right angles in a easterly direction a distance of 320 feet; thence at right angles in a northerly direction a distance of 52 feet; thence at right angles in an easterly direction a distance of 220 feet to the west line of the Abita-Mandeville Highway; thence at right angles along the west line of the Abita-Mandeville Highway a distance 110 feet back to the point of beginning.
For the above and foregoing reasons, the judgment of the trial court is reversed, and there is now judgment in favor of defendants-appellants annulling and voiding the tax sale. Costs of this proceeding in both the trial court and in this court are assessed against plaintiff-appellee.
REVERSED AND RENDERED.
COVINGTON, J., dissents; Childress, cited by the majority is partially distinguishable.
NOTES
[1] The quit claim deed contained the following disclaimer: "The purchaser accepts the property herein subject to all title defects and the seller makes no representations that she is the owner of this property or that her tax title is valid."