666 So.2d 409 (1995)
A. Leon HEBERT, in His Capacity as Executor of the Last Will and Testament of Rena L. Pemble; H.C. McCall, III, Individually as a Legatee of Rena L. Pemble and in His Capacity as Former Curator of the Interdict, Rena L. Pemble; and London McCall, Legatee of Rena L. Pemble
v.
Rodney WISE; Baton Rouge Renovation Project, Inc.; Dennis Stine, in His Capacity as Commissioner of the Division of Administration of the State of Louisiana; William J. Guste, Jr., in His Capacity as Attorney General of the State of Louisiana; Ronald J. Gomez, in His Capacity as Secretary of the Department of Natural Resources of the State of Louisiana; and Elmer B. Litchfield, in His Capacity as Sheriff of East Baton Rouge Parish, Louisiana.
No. 92 CA 2287.
Court of Appeal of Louisiana, First Circuit.
December 15, 1995.
*410 Charles L. Spencer, Baton Rouge, for Plaintiffs-Appellees.
David C. Kimmel, Baton Rouge, for Defendants-Appellees Attorney General Office.
Jeffrey S. Wittenbrink, Baton Rouge, for Defendants-Appellants Rodney Wise and Baton Rouge Renovation Project, Inc.
Before LeBLANC, WHIPPLE and FOGG, JJ.
FOGG, Judge.
The issue raised on appeal in this action to annul a tax sale of immovable property is whether the trial court erred in granting the plaintiffs' motion for summary judgment and annulling the sale based on lack of notice. We reverse.
The executor of the estate of Rena L. Pemble, A. Leon Hebert, and Pemble's legatees, H.C. McCall, III, and London McCall (plaintiffs), filed suit on September 27, 1991 to annul a tax adjudication and sale of property owned by Pemble. They named as defendants Rodney Wise; Baton Rouge Renovation Project, Inc. (BRRP); Dennis Stine, Commissioner of the Division of Administration of the State of Louisiana (Commissioner); William J. Guste, Jr., Attorney General of the State of Louisiana (AG); Ronald J. Gomez, Secretary of the Department of Natural Resources of the State of Louisiana (Secretary); and Elmer B. Litchfield, Sheriff of East Baton Rouge Parish, Louisiana (Sheriff). In their petition, the plaintiffs alleged that on June 11, 1986, the Sheriff adjudicated a lot and house at 147 St. Charles Street in Baton Rouge owned by Pemble for unpaid 1985 property taxes; that on August 7, 1991, that property was sold at a tax sale to Wise, who subsequently sold it to BRRP; that Pemble was interdicted in 1984; and that her curator never received notice of the tax delinquency or sale. The plaintiffs alleged that the tax sale should be annulled because the lack of notice violated their state and federal due process rights.[1]
The Commissioner, AG and Secretary filed a peremptory exception raising the objection of prescription which was later voluntarily dismissed without prejudice. The Sheriff responded to the plaintiffs' requests for admissions but did not answer the plaintiffs' petition.[2] Wise and BRRP answered.[3] The plaintiffs then moved for a summary judgment against "the defendants" alleging that the tax sale was an absolute nullity because the defendants failed to give the plaintiffs proper notice of the tax delinquency and this lack of notice violated the plaintiffs' due process rights under the United States Constitution and the Louisiana Constitution, and their statutory rights under LSA-R.S. 47:2180. Summary judgment was granted against all six defendants, annulling the adjudication, the sale to Wise and the sale from *411 Wise to BRRP.[4] Wise and BRRP (appellants) appealed, contending that the trial court erred in granting the motion for summary judgment. On appeal, the appellants filed a peremptory exception raising the objection of prescription. This court remanded the case to the trial court for "an evidentiary hearing" for "the purpose of determining the merits of the exception of prescription." Hebert v. Wise, 92-2287, p. 3 (La.App. 1st Cir. 6/24/94); 638 So.2d 735, 736. We retained jurisdiction to decide the errors assigned regarding the granting of the motion for summary judgment if it were found that the plaintiffs' action had not prescribed. Hebert, 92-2287, p. 3, 638 So.2d at 736. The trial court held the hearing and overruled the exception. From this judgment, the appellants have taken writs, contending that the trial court erred in overruling the exception. Hebert v. Wise, 95 CW 1623 (La.App. 1st Cir. 12/14/95); 667 So.2d 1240.
On this appeal, the appellants contend that the trial court erred in finding no material issue of fact regarding the plaintiffs' lack of notice, in failing to find that the plaintiffs cause of action was prescribed, and in failing to find that the plaintiffs are estopped under the doctrine of equitable estoppel from annulling the sale. Based on our determination regarding the notice issue, we pretermit the appellants' contention regarding equitable estoppel. The prescription issue is disposed of in our consideration of the appellants' writ. Hebert v. Wise, 95 CW 1623 (La.App. 1st Cir. 12/14/95); 667 So.2d 1240.
The undisputed material facts upon which the plaintiffs relied in their motion for summary judgment were that Pemble was domiciled at 4200 Essen Lane in Baton Rouge from March, 1983 until her death in October, 1990.[5] Pemble was interdicted on January 21, 1985 by judgment of the Nineteenth Judicial District Court. H.C. McCall, III, qualified as provisional curator on August 7, 1984, and after Pemble's interdiction recorded his permanent bond on April 29, 1985 in the parish mortgage and conveyance records. In February, 1991, McCall was relieved of his duties as Pemble's curator because Hebert was appointed executor in Pemble's succession. On April 6, 1986, the Sheriff's office sent a notice of tax delinquency of $218.95 by certified mail to 147 St. Charles addressed to "LaCroix, Rena L. Pemble." The letter was returned as undelivered and marked "Vacant." The records of the Sheriff's office do not show that any steps other than the undelivered tax notice posted by certified mail were taken or attempted by the staff of the Sheriff's office to apprise Pemble of a tax delinquency. The records do not show that notice was given or attempted to be given to Pemble's curator. Hebert stated in his affidavit that he had examined the 1985 Louisiana Polk's Baton Rouge Suburban Directory and located a listing for "Pemble Rena" at 4200 Essen Lane, which is where Pemble resided at that time; Hebert attached a copy of the pertinent page from the directory to his affidavit. Four public notices were published of a proposed state land sale of Pemble's property; no notice of the sale to Wise was given to Pemble's curator or the executor of her succession.
This court must determine if the trial court erred in annulling the adjudication and sale based on due process violations. See Drury v. Watkins, 546 So.2d 1280 (La.App. *412 1st Cir.), writ denied, 551 So.2d 1323 (La. 1989). This court has set aside a tax sale where the notice did not meet due process requirements, despite the passage of the five year period within which a tax debtor or his successor in title may seek to set aside a tax sale under LSA-Const. Art. VII, sec. 25(C).[6]See Drury v. Watkins, 546 So.2d at 1280. To determine the constitutional adequacy of the notice of the delinquency, we must apply the standards announced by the Supreme Court in Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). In Mennonite, the Court, citing its previous decision in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950), recognized that "prior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide `notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Mennonite, 462 U.S. at 795, 103 S.Ct. at 2709, 77 L.Ed.2d 180. The Court explained that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party ... if its name and address are reasonably ascertainable." Mennonite, 462 U.S. at 800, 103 S.Ct. at 2712, 77 L.Ed.2d 180. See also Parkview Oak Subdivision Corp. v. Tridico, 95-0604, p. 5 (La.App. 1st Cir. 11/9/95), 667 So.2d 1101, 1103.
The statutory requirements for notice of a tax delinquency are set forth in LSA-R.S. 47:2180; in this case, the Sheriff complied with by those requirements by sending certified notice to the record owner of the property, and, when it was returned undeliverable, publishing the notice.[7]
*413 In reviewing a motion for summary judgment, appellate courts review summary judgments de novo under the same criteria that governs the trial court's consideration of whether summary judgment is appropriate. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318 (La.1993). A motion for summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there are no genuine issues of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. The mover has the burden of showing the absence of a genuine issue of material fact and any doubt should be resolved against granting the motion. Williams v. State, 93-0278 (La.App. 1st Cir. 3/11/94); 640 So.2d 365.
In this case, the plaintiffs failed to meet their burden of showing that their due process rights were violated by the lack of notice, such that the trial court erred in granting the motion for summary judgment and annulling the tax sale. The plaintiffs were entitled to notice by mail or other means as certain to ensure actual notice as a minimum constitutional precondition if the curator's name and address were reasonably ascertainable. The plaintiffs did not show on their motion for summary judgment that the curator's name was reasonably ascertainable by the Sheriff, such that mail or equivalent notice to the curator was required. In the Mennonite case, the name of the mortgagee for whom the Court required mail notice was reasonably ascertainable because it was readily identifiable from the land records. However, in this case, the plaintiffs stated in an affidavit that the curator's bond was recorded in the parish mortgage and conveyance records; the plaintiffs did not submit certified copies of those records showing such recordation of the bond, nor did they submit proof that the judgment of interdiction was recorded in the conveyance records. LSA-C.C.P. art. 4552.[8] While the plaintiffs did attach to their petition a notice of the filing of the interdiction which was alleged to be filed in the mortgage and conveyance records, the attachment is not a certified copy, it does not contain the recordation information, Pemble's name is misspelled, and it does not set forth the curator's name. The only other proof the plaintiffs submitted to show that notice was reasonably ascertainable was a listing for Pemble in the suburban directory.
Where, as in this case, the plaintiffs have not shown that the name of a party with a protectable interest is recorded in the land records, under both Mullane and Mennonite, we must consider whether, under all the pertinent circumstances, it is reasonable to expect the Sheriff to have identified the name of Pemble's curator. Whether such identification is reasonably to be expected depends on the burden the Sheriff would have to undertake and on the likelihood that the names would be brought to the Sheriff's attention without undertaking such burden. See Bender v. City of Rochester, N.Y., 765 F.2d 7 (2d Cir.1985). Though language in Mennonite emphasizes that a party's ability to protect its own interests does not relieve the government of its due process obligations, 462 U.S. at 799, 103 S.Ct. at 2712, the initial determination of what obligation due process imposes must take into account what the interested party, or someone obligated to act on its behalf, is likely to do. See Bender, 765 F.2d at 11. In this case, the *414 name of the curator could have been identified by examination of the probate records of the Nineteenth Judicial District Court, which would have disclosed the interdiction of the record owner of the property and the appointment of the curator. LSA-C.C.P. arts. 4541, 4542, 4550, 4552. While the burden of inspecting records of the probate court is not heavy, it is a task beyond the routine examination of land records that was involved in Mennonite.
In considering what the interested party is likely to do to protect his property rights, we think the Sheriff was entitled to expect that one appointed to administer an estate that includes immovable property would place something in the mortgage and conveyance records to put the world on notice of the owner's interdiction and would also obtain mail addressed to the interdict. A curator is a fiduciary who is empowered to act on the interdict's behalf, and as administrator of the interdict's estate, had the legal duty to collect and preserve the interdict's assets and to pay the interdict's debts. LSA-C.C.P. Art. 4262, which deals with the tutorship of minors but is made applicable to interdiction proceedings by LSA-C.C.P. Art. 4554, states, in pertinent part:
The tutor shall take possession of, preserve, and administer the minor's property. He shall enforce all obligations in favor of the minor and shall represent him in all civil matters. He shall act at all times as a prudent administrator, and shall be personally responsible for all damages resulting from his failure so to act.
A curator at all times must act exclusively in the best interest of the interdict. He must scrupulously administer the affairs of the interdict and explore every avenue available in fulfilling his duty to the interdict. Haynes v. Haynes, 545 So.2d 1245 (La.App. 2d Cir. 1989); In Re Interdiction of Ronstrom, 436 So.2d 588 (La.App. 4th Cir.), writs denied, 437 So.2d 285 (La.1983). Thus, the curator in this case was legally obliged to preserve and administer the interdict's property, and the receipt of mail and payment of taxes are merely incidents of that administration. If a curator is to fulfill these fiduciary obligations, it is entirely reasonable to assume that he will make some effort to obtain mail sent to the interdict. If the mail contains a notice that the government is taking some action against property of the interdict, it is reasonable to assume that the curator will take steps to preserve the property. In light of all of the pertinent circumstances, we do not believe the name of the curator was reasonably ascertainable for purposes of applying Mennonite and determining whether due process required the Sheriff to mail the curator notice.
Our analysis is entirely consistent with the holding in Mennonite. The Supreme Court's concern that the mortgagee was not likely to receive actual notice arose from the fact that the mortgagor, who did receive mailed notice, was said not to be in "privity" with his mortgagee. Mennonite, 462 U.S. at 799, 103 S.Ct. at 2711. The privity that was lacking in Mennonite clearly is present in this case because the curator of an interdict's estate is in privity with the interdict. Unlike a mortgagee who will not learn of the contents of his mortgagor's mail unless the mortgagor chooses to inform him, a curator will always, if he is fulfilling his legal duties, take steps to receive the interdict's mail and learn of proceedings pending against the interdict's property. Moreover, unlike a mortgagor who has failed to protect his own interest in mortgaged property and who has no incentive to inform his mortgagee of a pending foreclosure sale, the curator is legally obligated to preserve the interdict's assets in order to protect himself from liability for breach of fiduciary duty.
We are aware of this court's statements in Drury and Childress v. Johnson, 387 So.2d 1217 (La.App. 1st Cir.), writ denied, 393 So.2d 744 (La.1980), that, when a mailed notice is required and such notice is returned to the tax collector undelivered or unclaimed, the tax collector must take additional reasonable steps to notify the tax debtor and the failure of the tax collector to perform this obligation renders the tax sale void. Both of these cases are distinguishable from the instant case. In Drury, the record owner of the property had died and the sheriff sent a notice of delinquency to the decedent's address, despite repeated notices by the heirs *415 of a change of address. Drury, 546 So.2d at 1281-1282. We determined that the sale should be annulled due to lack of notice, but we also stated that "[w]e do not believe that under the peculiar facts of this case any undue burden would have been placed on the tax collector" because the Sheriff's own files and records contained the proper address. Drury, 546 So.2d at 1286. In Childress, there was no evidence of record that the property owners of record, who were actually residing on the property, received the certified letter sent by the sheriff, or that they received notice that a certified letter had been sent to them. Childress, 387 So.2d at 1220. In both of these cases, unlike the situation in the case at bar, it was reasonable to expect the sheriff to properly notice the property owners, and in these cases, the property owners adequately protected their own interests.
For the foregoing reasons, the judgment of the trial court granting the summary judgment is reversed, the motion for summary judgment is denied, and the case is remanded to the district court for further proceedings. Costs of this appeal and those incurred in connection with the motion for summary judgment are cast against the appellees.
REVERSED AND REMANDED.
NOTES
[1] The plaintiffs also alleged other grounds for nullification of the sale: that the property was erroneously adjudicated to the state rather than East Baton Rouge Parish; that the tax sale conveyed more interest in the property than required to satisfy the taxes, interest, penalties and costs which were due; that the advertising of the sale was improper; that the legal instrument transferring title was defective; and that the sale of the property was for an amount far below its true value.
[2] We note another response to the plaintiffs' requests for admission was filed by "RANDALL EVANS, defendant herein," although there is nothing in the record indicating Evans was ever named as a defendant or served.
[3] Wise and BRRP later amended their answer and cross-claimed against "the East Baton Rouge Sheriffs [sic] Office and/or the State of Louisiana Land Office." The Sheriff answered the cross-claim.
[4] One week after the summary judgment was granted, "the State of Louisiana" answered the suit and cross-claimed against Wise and BRRP.
[5] In support of their motion for summary judgment, the plaintiffs submitted the affidavits of Hebert and McCall and responses to requests for admissions by the Sheriff, Evans and Wise. The record contains no evidence submitted by the appellants in opposition to the motion for summary judgment. While the appellants in brief refer to an affidavit submitted with a memorandum in opposition to the motion for summary judgment, the record does not contain such an affidavit or memorandum, and we may not consider the statements in brief regarding these items.

We note that while evidence was introduced concerning the notice issue when this matter was remanded for hearing on the exception of prescription, we are limited to considering the pleadings, answers to requests for admissions on file, and affidavits which were before the trial judge when he decided the motion for summary judgment and we cannot consider the evidence introduced at the hearing on the prescription exception in deciding whether the trial court erred in granting the motion for summary judgment.
[6] LSA-Const. Art. VII, Sec. 25(C) provides, in pertinent part:

No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. A notice of sale shall not be served until the final day for redemption has ended. It must be served within five years after the date of the recordation of the tax deed if no notice is given.
[7] LSA-R.S. 47:2180 provides for notice of delinquency and states, in pertinent part:

A. On the second day of January each year, or as soon thereafter as possible, the tax collector shall address to each taxpayer who has not paid all the taxes, which have been assessed to him on immovable property, or to the record owner of the property for which the taxes are delinquent, or to the actual owner in the event the record owner is deceased, written or printed notice in the manner provided for herein that his taxes on immovable property must be paid within twenty days after the service or mailing of the notice, or that the property will be sold according to law.
B. The tax collector shall send to each taxpayer by certified mail, with return receipt requested, the notice prescribed herein, provided that in cities containing a population of over fifty thousand persons, the tax collector may either send this notice by certified mail or may make personal or domiciliary service on the taxpayer. In the event the certified notice is returned as being undeliverable by the post office, the tax collector may comply with Article 7 Section 25 of the Constitution of Louisiana and the provisions of this Section by advertising the tax debtor's property in the advertising required for unknown owners in Subsection C of this section. After the tax collector shall have completed the service by the notices herein required, either by mail or by personal or domiciliary service, he shall make out a proces verbal stating therein the names of delinquents so notified, their post office addresses, a brief description of the property, the amount of taxes due and how the service of notice was made. Such proces verbal shall be signed officially by him in the presence of two witnesses and filed, in the parishes other than the parish of Orleans, in the office of the clerk of court for recording and preservation. In the parish of Orleans, such proces verbal shall be filed in the office of the state tax collector for the city of New Orleans and preserved for record. This proces verbal shall be received by the courts as evidence. The tax collector shall be entitled to collect actual mailing costs of each certified, with return receipt, notice, and mileage shall be charged for service of this notice. A like charge will be made if the property is adjudicated to the state or any subdivision thereof.
C. The tax collector shall publish one general notice substantially in the form set forth herein, addressed to all unknown owners of assessed immovable property situated in his parish, and to nonresident owners of such property whose post office address is unknown, in which he shall describe the property as described in the tax roll. Such notice shall be published once a week for two weeks in a newspaper published in his parish, or if there be none published in the parish, then such notice shall be given in the manner provided by law for judicial sales. He shall pay for the publication, and shall be entitled to collect as costs therefor the pro rata share of the publication costs from each unknown owner or from the property assessed to him. The collector shall certify on his tax rolls that he has published the notices, and the certificate on either roll shall make full proof thereof until disproved in a judicial proceeding.
[8] LSA-C.C.P. art. 4552 states, in pertinent part, "The clerk of court shall cause to be recorded in the conveyance records of the parish in which an interdiction suit is filed a notice of the filing of the suit. Within ten days of his appointment, the curator shall cause the judgment of interdiction to be recorded in the conveyance records of the parish in which the judgment was rendered and in each parish in which the interdict owns immovable property."