JgMcCLENDON, J.
In this appeal, the husband of an interdict challenges the judgment of the trial court denying his motion to relocate his wife out of state. For the reasons that follow, we reverse.
FACTS AND PROCEDURAL HISTORY
On February 7, 2003, Wendy Ganel filed a petition to have her mother, Alma *423 Breaux Domingue Rodrigue, interdicted because her mother suffers from Alzheimer’s disease and other forms of dementia. Initially Mrs. Ganel was appointed curator but became undercuratrix when Mrs. Ro-drigue’s husband, Rumsey, was appointed curator. Thereafter, Mr. Rodrigue, in his capacity as curator, filed a motion requesting that he be allowed to relocate Mrs. Rodrigue to an assisted-living facility in Corpus Christi, Texas. Following a hearing on November 20, 2003 and February 11, 2004, the trial court denied the motion. Judgment was signed on February 18, 2004. Mr. Rodrigue then filed a writ application to this Court. The Court determined that the trial court ruling on the motion to relocate was an appealable judgment and remanded the matter to the trial court with instructions to treat the notice of intent to seek supervisory writs as a motion for appeal.[1]
Mr. Rodrigue has appealed and asserts that the trial court applied erroneous principles of law in denying court approval to Mr. Rodrigue to relocate Mrs. Rodrigue to Texas and that the trial court was manifestly erroneous in denying the motion to relocate.
DISCUSSION
Louisiana Code of Civil Procedure Auricle 4566 F provides that “[a] curator shall not establish or move the place of dwelling of the interdict outside this state without prior court authorization.” Additionally, Article 392 of the Louisiana Civil Code provides, in pertinent part, that “[i]n discharging his duties, a curator shall | Sexercise reasonable care, diligence, and prudence and shall act in the best interest of the interdict.” Clearly, a curator at all times must act exclusively in the best interest of the interdict. Hebert v. Wise, 92-2287, p. 9 (La.App. 1 Cir. 12/15/95), 666 So.2d 409, 414.
Mr. Rodrigue initially contends that the trial court applied an incorrect legal standard when it determined that Mrs. Ro-drigue could not relocate. He asserts that the trial court applied a “community property interest — inheritance rights” standard to its decision on the motion to relocate. A review of the record, however, indicates that the trial court made its decision based on the best interests of Mrs. Rodrigue. The court referred to the “best interest of the interdict” on at least four different occasions in its oral reasons for judgment stating for example: “I have to think what’s best for the interdict,” “I have to put her first,” and “[T]he best interest is that she not be moved at this point [in] time.”
Thus, we do not find the standard used by the trial court to be legally erroneous. However, after reviewing the record, we find that the trial court’s factual determination that it was not in the best interest of Mrs. Rodrigue to allow her to remain with her husband and relocate to the assisted-living facility in Corpus Christi was clearly wrong and manifestly erroneous.
It is well settled that a court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Bonin v. Ferrellgas, Inc., 03-3024, p. 6 (La.7/2/04), 877 So.2d 89, 94. Under the manifest error standard, in order to re- *424 verse a trial ■ court’s determination of a fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Bonin, 03-3024 at pp. 6-7, 877 So.2d at 94-95; Stobart v. State, Through Dep’t of Transp. and Dev., 617 So.2d 880, 882 (La.1993).
However, the manifest error standard of review does not “mandate that the trial court’s factual determinations cannot ever, or hardly , ever, be upset.” Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099, p. 8 (La.7/5/94), 639 So.2d 216, 221. Recognizing that great deference should be accorded to the fact finder, the court of appeal has a constitutional duty to review facts. To perform its constitutional duty properly, an appellate court must determine whether the trial court’s conclusions were clearly wrong based on the evidence or clearly without evidentiary support. Bonin, 03-3024 at p. 7, 877 So.2d at 95.
Alma and .Rumsey Rodrigue had been married for more than twenty-seven years at the time of the hearing in this matter. Mrs. Rodrigue has four daughters from a previous marriage, including Wendy Ganel. Mr. Rodrigue also has a daughter, Carol Didier, from an earlier marriage. Mr. Ro-drigue’s daughter lives near Corpus Chri'sti, Texas, while Mrs. ' Rodrigue’s daughters all live in Louisiana.[2]
In July 2001, Mrs. Rodrigue was diagnosed with Alzheimer’s disease. In January 2003, the Rodrigues moved from their home in Labadieville to the Suites Sugar Mill Point, an assisted-living 'facility, in Houma; The testimony is undisputed that the facility is the best of its kind in -the area.
At the hearing in this matter, Mr. Ro-drigue testified that he wanted to move with his wife to Corpus Christi to Home-wood Residence, a facility specializing in the care of Alzheimer patients.[3] He stated that Homewood Residence has amenities not offered at Sugar Mill Point, such as transportation for doctor appointments and for shopping. Additionally, his daughter lives about ten minutes from the facility, and he stated that he has no family in Louisiana to help him. Mrs. Didier also testified, that it was her opinion that Homewood Residence is a slightly better facility than Sugar Mill Point because Homewood Residence offers a special memory unit to which Mrs. Rodrigue can be transferred when her disease reaches a certain point. Additionally, Mrs. Didier testified that Homewood Residence offers transportation and secretarial services [ Bthat Sugar Mill Point does not. Home-wood Residence also costs $800 less per month than Sugar Mill Point.
It is undisputed that Mr. Rodrigue ably took care of the couple’s finances throughout their marriage and was able to acquire more than $800,000 in annuities, of which Mrs.. Rodrigue was an annuitant on approximately $450,000. Mr. Rodrigue testified that he purchased the annuities for his and. his wife’s future care; He wanted to be sure that if one spouse died, there would be sufficient assets for the proper care of the surviving spouse. Mr. Ro-drigue believed that Mrs. Rodrigue’s daughters turned against him when they *425 discovered he and Mrs. Rodrigue had “a little money.”
Mr. Rodrigue also testified with regard to Mrs. Rodrigue’s relationship with her daughters that they did not visit their mother daily. However, he admitted that the daughters had visited more often before Mr. and Mrs. Rodrigue moved to Sugar Mill Point in Houma. According to Mr. Rodrigue, Mrs. Rodrigue’s daughters did not have a real close relationship with their mother. Mr. Rodrigue testified that he and his wife moved out of their Laba-dieville home because of a need for increased assistance for Mrs. Rodrigue. Prior to moving into the assisted-living facility at Sugar Mill Point, Mr. Rodrigue had a sitter coming into their home twice a day during the week, but not on weekends. When he asked Mrs. Rodrigue’s daughters to take turns and help him with the care of their mother one weekend a month, each daughter declined indicating that she was too busy.
Dr. Edward Haight, an expert in neurology, testified by deposition that he first saw Mrs. Rodrigue on May 20, 2003. Dr. Haight found Mrs. Rodrigue to be suffering from severe dementia with Par-kinsonism. He described it as a neúrode-generative disease resulting in progressive dementia that causes Parkinson-type symptoms. Additionally, there are problems with agitation and confusion. With regard to a possible move, Dr. Haight stated that it would “probably result in temporary increase in agitation, but I think it would easily equilibrate after several days.” He stated that Mrs. Ro-drigue’s dementia was |fiprofound and se-. vere. Therefore, he believed that a move would not be that hard for her to readjust to a new surrounding, as long as her needs are being cared for.
Dr. Haight agreed that the move might have an adverse affect on Mrs. Rodrigue if her daughters were an integral part of her support system and if they were a strong part of her day-to-day activities. If not, Dr. Haight did not think the move would be detrimental to the health of Mrs. Ro-drigue. Dr. Haight also agreed that if Mr. Rodrigue was happy and comfortable in his environment, Mrs. Rodrigue would benefit. He stated that “Mr. Rodrigue is probably the most familiar thing that she has.”
Mrs. Rodrigue’s daughters, however, oppose the move to Texas. Mrs. Ganel testified that, with her mother’s failing health and her stepfather’s advanced age, she and her sisters became concerned about the community assets and Mrs. Didier’s alleged influence over her father. The daughters were concerned that Mr. Ro-drigue would give large amounts of cash to his daughter, thereby negatively affecting the community’s financial ability to provide the necessary care for Mrs. Rodrigue. Additionally, Mrs. Rodrigue and Mrs. Didier had never gotten along and Mrs. Ganel testified that her mother despised Mrs. Didier.
It seems that the protection of Mrs. Rodrigue’s ássets, if the Rodrigues were allowed move to Texas, was also the trial court’s greatest concern. In fact, the trial court referred to protecting Mrs. Ro-drigue’s assets at least a dozen times in its oral reasons. It is undisputed, however, and the trial court found that Mr. Ro-drigue had always taken care of the finances for them and had done an excellent job accumulating over $800,000 in annuities for their future care. The evidence does not suggest in any way that Mr. Rodrigue would cease caring for Mrs. Ro-drigue or protecting her assets if they moved to Texas.
The trial court recognized that the Rod-rigues have lived in Louisiana all their lives and that Mrs. Rodrigue’s four daugh *426 ters are here. The evidence is also clear, however, that Mrs. Rodrigue’s daughters were not a part of her day-|to-day7 life. They visited when their schedules allowed, but it is evident that the most familiar thing in Mrs. Rodrigue’s life is her husband.
Having considered all of the factors relied on by the trial court in its decision to keep Mrs. Rodrigue in Louisiana, we do not believe those considerations overcome the strong evidence in favor of keeping Mrs. Rodrigue with her husband. While we acknowledge the interests of Mrs. Ro-drigue’s four daughters to keep their mother in Louisiana, we find that the evidence of the interdict’s best interest is overwhelmingly in favor of allowing the move to Texas.
Thus, based upon our thorough review of the entire trial record, we do not believe a reasonable factual basis exists for the trial court’s finding that it was in the best interest of Mrs. Rodrigue not to relocate. We determine that the trial court was clearly wrong in its factual determination and find that the interests of Mrs. Ro-drigue would best be served by permitting the move to Homewood Residence in Corpus Christi, Texas.
CONCLUSION
For the above reasons, the judgment of the trial court denying Mr. Rodrigue’s Motion for Authority to Relocate Interdict out of State is reversed and Rumsey Rodrigue, as curator, is hereby authorized and permitted to relocate the interdict, Alma Breaux Domingue Rodrigue, to Homewood Residence in Corpus Christi, Texas. Costs of this appeal shall be borne by Wendy Ganel.
REVERSED AND RENDERED.

. Mr. Rodrigue had also filed a motion seeking permission to change the beneficiary designations on various annuities purchased by the community. That motion was also denied by the trial court and Mr. Rodrigue sought writs. This Court denied the writ application finding no error on the showing made. The writ denial in part, with order regarding both motions, bears number 2004 CW 1068.

. . Mrs. Ganel resides in Gonzales; Dale Calle-gan resides in Labadieville; Sandra Milazzo resides in Napoleonville; and Arlene Richard resides in Prairieville.

. The facility has been identified as Home-wood Residence and Homewood Suites in the record. For consistency, we will refer to it as Homewood Residence.