DREW, J.
In this interdiction proceeding, the trial court entered judgment ordering the interdiction, but denied the request to place the elderly interdict at a senior care facility in Texas. The petitioners to the interdiction appeal the location determination. We reverse that part of the judgment.
FACTS
Huey Pierce Roberts ("Roberts"), who was 85 years old at the time of this proceedings and a longtime resident of Farmerville, Louisiana, has four children: Phyllis Ramblin of Farmerville; Suzonne Taliaferrro of Flint, Texas; Joseph Roberts of Iowa, Louisiana, and Randy Roberts of Dallas, Texas.
In 2003, Roberts granted Phyllis a full power of attorney, including the making of medical decisions. In October of 2011, Roberts granted Suzonne a power of attorney over his assets, but not over his medical or health care decisions. Although Suzonne eventually became more involved in her father's financial matters because of her concerns that he was being exploited financially, she did not formally accept the power of attorney until May 18, 2016.
Dr. Gary Tubre, an internist who started treating Roberts in July of 2010, diagnosed *169 Roberts in 2011 as suffering from Alzheimer's disease. When he examined Roberts for the first time in a year on February 23, 2016, he discovered that Roberts had lost 21 pounds and had a chronic rash.
Roberts, who was living alone, had a caretaker present from 7:00 a.m. to 5:00 p.m. on weekdays. A niece began watching him on weekends following his February 2016 visit with Dr. Tubre.
On May 26, 2016, Suzonne and Joseph filed a petition to interdict their father because of his inability to make reasoned decisions regarding his personal care and personal safety. Among their requests was that the court authorize them to move Roberts into the Brookdale Living Center in Henderson, Texas.
On June 28, 2016, Suzonne took Roberts for an examination by Dr. Gary Booker, who specializes in general psychiatry with a subspecialty in geriatric psychiatry. Dr. Booker concluded that Roberts needed full-time supervision. Suzonne followed Dr. Booker's suggestion that she take Roberts home with her because he could not be left alone. At the time of trial, Roberts remained at Suzonne's home, where Suzonne and her husband provided care and supervision, with relief occasionally provided by Joseph and his wife. Suzonne had installed door alarms in her house, a mattress alarm on Roberts' bed, and a video monitor was used to watch his bedroom at night without disturbing him.
On June 7, 2016, Phyllis took her father before a notary, where he revoked Suzonne's power of attorney. This revocation was ultimately set aside.
Dr. Sally Thigpen, a psychologist, was appointed by the court to examine Roberts for any infirmities and to assess the appropriateness of interdiction. She agreed that Roberts was unable to care for himself and needed supervision at all times.
Among the witnesses at trial was April Gilchrist, a licensed professional counselor who was hired by Suzonne and Joseph to initially assess Brookdale as well as three facilities in Farmerville to determine if any of them would meet Roberts' needs. Gilchrist reviewed the medical reports and took into consideration Roberts' financial means, including VA benefits. Farmerville Nursing and Rehabilitation Center would not meet his needs and did not accept VA benefits. Although Arbor Lake Skilled Nursing and Rehabilitation in Farmerville offered full-time care and supervision, Gilchrist was concerned that Roberts would not get the amount of contact there that he needed to stimulate his mind. It also did not accept VA benefits. The director of Arbor Rose Assisted Living in Farmerville did not think his facility would be appropriate for Roberts, so it did not meet Gilchrist's criteria for placement. Gilchrist thought that Brookdale, which accepted VA benefits, was the best facility for Roberts' needs. Gilchrist later visited Russ Place in Ruston, which was relatively equal to Brookdale in cost. While Russ Place accepted VA benefits and Gilchrist thought it was comparable to Brookdale, it did not offer a separate locked memory care unit or personal care assistants. Gilchrist considered a locked memory care unit to be a minimum requirement for Roberts. Therefore, according to Gilchrist, Brookdale remained the best choice for meeting Roberts' current and future needs.
The trial court entered judgment declaring the full interdiction of Roberts as to both his person and property. Suzonne was appointed curatrix. Randy was appointed undercurator. The trial court denied the request to place Roberts in a facility outside of Louisiana. Suzonne and Joseph appealed the denial of their request.
*170 In its written ruling, the trial court provided a detailed and valuable summary of the testimony and records. We attach that ruling as an unpublished appendix to this opinion.
DISCUSSION
An appellate court may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO , 549 So.2d 840 (La.1989). When one or more legal errors are present, however, the appellate court does not apply the manifest error standard of review but instead conducts a de novo review of the record. Evans v. Lungrin , 1997-0541 (La. 02/06/98), 708 So.2d 731. A legal error occurs when a trial court prejudicially applies incorrect principles of law such that it materially affects the outcome of the case and deprives a party of substantial rights. Lasha v. Olin Corp. , 625 So.2d 1002 (La. 1993).
Suzonne and Joseph argue on appeal that a de novo review is allowed because the trial judge applied an incorrect standard of law during the process of deciding that Roberts could not be relocated to Brookdale. They further argue that this decision itself was also manifestly erroneous and unsupported by the record.
La. C.C.P. art. 4566(F) states that a curator shall not establish or move the place of dwelling of the interdict outside this state without prior court authorization. The standard to be used by the court is the best interest of the interdict. See In re Interdiction of Rodrigue , 2005-0061 (La. App. 1 Cir. 11/4/05), 927 So.2d 421, where the court determined that the trial judge used the correct legal standard when it denied relocation under art. 4566(F) because it referred several times to the interdict's best interest.
In its ruling, the trial court stated:
The decision as to where to place Mr. Roberts is difficult. My hope is that the children will set aside their differences and work together for Mr. Roberts' best interests. I am convinced that all of the children have a deep love and affection for their father. The Court is not at this time approving a placement for Mr. Roberts. I encourage the children to work together to formulate a plan of care for him, especially in light of La. C.C.P. art. 4566(E) and (F). If the curator and undercurator cannot come to a consensus as to the proper plan of care for their father, the Court will address this in future hearings.
We applaud the trial court's attempt at family consensus on the placement issue, but we are constrained to reverse, as the best interest of Roberts must be the total consideration in this sad case. Even if this court applied the manifest error standard, our determination would be the same. To reverse a fact finder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Stobart v. State through Dept. of Transp. & Dev. , 617 So.2d 880 (La. 1993).
The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court; but, if the trial court findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the fact finder's choice between *171 them cannot be manifestly erroneous or clearly wrong. Rosell , supra .
While Randy agreed that it was time for his father to have full-time care, he preferred that his father stay as close to his church family as possible, and was concerned that none of his father's friends could drive from Farmerville to Henderson, Texas, for visits. He wanted his father near Farmerville until he was unaware of who he is or who his friends are.
Phyllis thought daily care at home from 9:00 a.m. to 6:00 p.m. and 9:00 p.m. to 6:00 a.m. would be sufficient for her father. If home care was not viable, then she wanted him placed at a facility near Farmerville so he could be close to his church family, could still visit friends at a drugstore, and play golf. She considered her father still to be a viable member of the community, and she thought it was cruel to move him away from everything he knew.
Dr. Booker thought that in Roberts' current mental state, memories of Farmerville went with Roberts wherever he went, so moving him was not as big an issue as they were making it out to be. Randy disagreed with Dr. Booker that his father's level of dementia was such that being close to Farmerville no longer mattered. Dr. Thigpen believed it would be too late to place Roberts somewhere when he could no longer recognize his family.
There was no testimony from any medical witness calling into question the propriety of placing Roberts at Brookdale. In her report prepared for the court, Dr. Thigpen stated that the decision about the best placement for Roberts was difficult, and that she prayed his children could set aside their differences and find a solution in his best interest. At trial, Dr. Thigpen testified that the ideal situation is when family members all agree as to what is best. However, she also testified that it would be in his best interest to place Roberts at Brookdale if it offered equal care and will not deplete his assets.
Dr. Booker testified that it would be in Roberts' best interest to live at Brookdale, and he absolutely agreed with Gilchrist's recommendation that Brookdale best met Roberts' needs. Dr. Booker thought that the lack of a secured separate memory unit at Russ Place disqualified it from consideration.
Another factor to consider is cost. The financial reality is that Roberts has monthly income of approximately $4,500. His income, along with the VA benefits, would cover the cost of Brookdale and leave him with some extra money. If he received full-time care at home, it is estimated that it would cost approximately $10,000 a month and he would be flat broke within six months.
As noted above, Phyllis proposed having in-home care for her father on a daily basis from 9:00 to 6:00 during the day and from 9:00 to 6:00 overnight. Phyllis had not analyzed the numbers to see how much home care under her plan would cost. Dr. Booker did not think Phyllis's proposed care plan met her father's needs or would be in his best interest. Dr. Thigpen did not think it would be in Roberts' best interest to follow Phyllis's plan of care and return him to the same caregivers.
For these reasons, the denial of the request to place Roberts at Brookdale, though understandable, was clearly wrong.
Finally, as a practical matter, it appears from the record that it would be extraordinarily difficult to get all four children to come to an agreement on much of anything, particularly as to their father's prospective venue. Phyllis does not even accept that he needs full-time care; she minimizes his dementia. Randy did not participate in mediation ordered by the *172 court. Suzonne has reached out to her father's pastor to help the family come to a resolution, but she testified that Phyllis did not want anyone else involved. Even Joseph, who is a petitioner to the interdiction proceedings, was initially opposed to placing his father anywhere until he saw how his father was living.
CONCLUSION
With each party to bear its own costs, we reverse that part of the interdiction judgment denying the request to place Roberts at Brookdale. In all other respects, the judgment is affirmed.
REVERSED IN PART, AFFIRMED IN PART.
UNPUBLISHED APPENDIX